IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBERT WAGNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF OMAHA, and OMAHA | ) | |
| POLICE OFFICERS BILLIE JO CEGLAR , | ) | |
| DANIELLE CLOUDT, JACKIE DOLINSKY, | ) | |
| JOSH KELLY, AARON PENNINGTON, | ) | |
| JODI SAUTTER, WILLIAM SIBERT, | ) | Case No. 12-cv-392 |
| SCOTT ZYMBALL, CHRISTIAN | ) | |
| MIRCH, and REUBEN SOTO, and | ) | |
| AS YET UNKNOWN OMAHA POLICE | ) | |
| OFFICERS | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, Robert Wagner, by his attorneys, LOEVY & LOEVY,

and complains of Defendants Billie Jo Ceglar, Danielle Cloudt, Jackie Dolinksy,

Josh Kelly, Aaron Pennington, Jodi Sautter, William Sibert, Scott Zymball, Rueben

Soto, and Christian Mirch (collectively, the "Defendant Officers"), and the City of

Omaha, and states as follows:

## Introduction

1.     On May 29, 2011, Plaintiff Robert Wagner was viciously beaten by

Omaha police officers as he was leaving Creighton University Medical Center,

where his cousin was undergoing treatment for what turned out to be a fatal injury.

2.     That beating was captured on videotape by Creighton University

security cameras.

3.     Plaintiff now brings this action to redress pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

## Jurisdiction

4.     This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

5.     Venue is proper under 28 U.S.C. § 1391(b).  All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district.

## The Parties

6.     Plaintiff Robert Wagner was at all relevant times a citizen of the United States and a resident of Omaha, Nebraska.

7.     Defendants Ceglar, Dolinksy, Kelly, Pennington, Sautter, Sibert, Zymball, Claudt, Soto, and Mirch were at all relevant times Omaha police officers, acting under color of law and within the scope of their employment for the City of Omaha. Defendants Ceglar, Dolinksy, Kelly, Pennington, Sautter, Sibert, Zymball, Claudt, Soto, and Mirch are sued in their individual capacities.

8.     Defendant City of Omaha is a political subdivision of the state of Nebraska, and is and/or was the employer of each of the Defendant Officers. The City of Omaha is responsible for the acts of the Defendant Officers while employed by the City of Omaha and acting within the scope of that employment.

### Factual Allegations

9.      Plaintiff Robert Wagner is a life-long resident of Omaha, Nebraska, where he works as a house painter.

10.     On May 19, 2011, Mr. Wagner received a telephone call from a family member, informing him that his cousin had been shot, and was grievously injured.

11.     Mr. Wagner rushed to Creighton University Hospital, where his cousin was undergoing treatment for what turned out to be a fatal wound.

12.     When he arrived at the hospital, Mr. Wagner joined his extended family in the waiting room. At some point, the family learned that their injured relative had died.

13.     Omaha police officers, including some or all of the Defendant Officers, led by Defendant Ceglar, were already at the hospital. The Defendant Officers denied family members' requests to see the deceased, as well as their requests to speak to a doctor or other medical professional.

14.     When Mr. Wagner's long-time girlfriend arrived at the hospital, police prohibited her from entering. The officers announced that the hospital waiting room was closed, and that nobody else would be permitted to enter.

15.     Mr. Wagner then decided to leave the hospital waiting room. As he was leaving, he saw police officers allow entry to City Councilman Ben Gray, despite their earlier announcement that no one else would be permitted to enter the waiting room.

16.     Mr. Wagner, understandably confused, asked Defendant Ceglar why Mr. Gray was being allowed to enter the waiting room. She refused to answer his question.

17.     Mr. Wagner then exited the hospital. As he left, he explained to his girlfriend that Defendant Ceglar was responsible for barring her entry to the hospital. In speaking with his girlfriend, Mr. Wagner referred to Defendant Ceglar using a common, but mildly insulting, epithet.

18.     Apparently angered by Mr. Wagner's comment, Defendant Ceglar ordered Defendant Officers to arrest Mr. Wagner, yelling, "Get him!" or words to that effect.

19.     Startled by Defendant Ceglar's shout, Mr. Wagner turned to face the hospital. As he did, he saw numerous police officers, including some or all of the Defendant Officers, rushing toward him. A number of the officers had already drawn their handguns, or weapons that appeared to be guns.

20.     When one of the officers announced that Mr. Wagner was under arrest, Mr. Wagner asked what he had done wrong. In fact, Mr. Wagner had done nothing wrong, and had committed no crime.

21.     Rather than answering Mr. Wagner's question, Defendant Zymball grabbed at Mr. Wagner's arm without warning or justification.

22.     As Mr. Wagner pulled his arm away from Defendant Zymball, he was temporarily blinded by a bright light shined in his eyes by one or more of the

Defendant Officers. Dazed and unable to see, Mr. Wagner attempted to swat at the light that was blinding him.

23.    Mr. Wagner immediately felt his right leg go numb, as one or more of the Defendant Officers shot him with a Taser without sufficient warning or justification.

24.    Several of the Defendant Officers then tackled Mr. Wagner to the ground.

25.    Although Mr. Wagner lay face down on the pavement, defenseless and offering no resistance, several of the Defendant Officers nonetheless jumped on his back, hit, kicked and Tasered him while other Officers stood by, watching the beating.

26.    Several times during the beating, Mr. Wagner told the Defendant Officers that he could not breathe, and pleaded with them to get off of his back, and to stop battering him. In response, the Officers continued to hit and kick him.

27.    When the beating was over, one of the Defendant Officers said, "That was fun!" or words to that effect.

28.    As the result of the beating, Plaintiff suffered pain and injury, including physical injury and emotional distress.

## Legal Claims

### Count I — 42 U.S.C. § 1983
### Excessive Force

29.     Each Paragraph of this Complaint is incorporated herein.

30.     As described above, the conduct of one or more of the Defendant Officers constituted excessive force against Plaintiff Robert Wagner in violation of the United States Constitution.

31.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

32.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

33.     As a result of the Defendant Officers' unjustified and excessive use of force, Plaintiff suffered pain and injury, including emotional distress.

34.     Plaintiff's injuries were proximately caused by the Defendant City of Omaha's policy, practice, and custom of failing to train, supervise, and control its police officers. Defendant Officers' misconduct was undertaken pursuant to the policy, practice, and custom of the City of Omaha in that:

a. As a matter of both policy and practice, the City of Omaha directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

6

b. As a matter of both policy and practice, the City of Omaha facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Omaha Police officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff;

c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Omaha Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Omaha Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Omaha Police Department, by which officers fail to report, or actively conceal, misconduct committed by other officers, such as the misconduct at issue in this case;

e. The City of Omaha has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

f. Specifically, the City's own Independent Police Auditor found that half or more of the Police Department's internal investigations of citizens' complaints were biased, incomplete, or insufficiently thorough.

g.   Indeed, according to the Auditor's published reports, the City of Omaha investigates only a portion of the complaints it receives alleging excessive force or other police misconduct, and sustains less than 3% of the complaints it investigates alleging excessive force by Omaha police officers.

h.   The Auditor further found that the Omaha Police Department's failure to train its officers resulted in a pattern of complaints alleging excessive force and other civil rights violations.

i.   The City of Omaha responded to the concerns raised by the Auditor by terminating the Auditor in 2006. The City has since refused to appoint a new Auditor to fill the position.

### Count II — 42 U.S.C. § 1983
### Conspiracy

35.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

36.   Defendant Officers reached an agreement among themselves to unlawfully detain and deprive Plaintiff of his constitutional rights, all as described in the various paragraphs of this Complaint.

37.   In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

38.   As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated and they suffered injury, including but not limited to emotional distress.

39.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

## Count III — 42 U.S.C. § 1983
### Failure to Intervene

40.    Each of the Paragraphs of this Complaint is incorporated herein.

41.    As described more fully above, one or more Defendant Officers had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above had they been so inclined, but failed to do so.

42.    Defendant Officers' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights. As a result of Defendant Officers' failure to intervene, Plaintiff suffered injury, including emotional distress.

43.    As a result of Defendant Officers' failure to intervene, Plaintiff suffered injury, including emotional distress.

## Count IV — State Law Claim
### Indemnification

44.    Each of the Paragraphs of this Complaint is incorporated herein.

45.    Pursuant to state law and municipal code, the City of Omaha is required to indemnify the Defendant Officers for acts committed within the scope of their employment.

46.    The Defendant Officers are or were employees of the Omaha Police Department who acted within the scope of their employment in committing the misconduct described above.

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in their favor and against Defendants, CITY OF OMAHA, BILLIE JO CEGLAR, DANIELLE CLOUDT, JACKIE DOLINSKY, JOSH KELLY, AARON PENNINGTON, JODI SAUTTER, WILLIAM SIBERT, SCOTT ZYMBALL, DANIELLE CLOUDT, CHRISTIAN MIRCH, and REUBEN SOTO, awarding compensatory damages and attorneys' fees, along with punitive damages against the Defendant Officers in their individual capacities, as well as any other relief this Court deems just and appropriate.

## Jury Demand

Plaintiff ROBERT WAGNER, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

s/ Pier Petersen
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Pier Petersen
LOEVY & LOEVY
312 North May St., Ste. 100
Chicago, IL 60607
(312) 243-5900
pier@loevy.com